IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Syndicate Nos. 2003, 1414, 0510, 4472, 1182, 1200, and 4444, Subscribing to Policy Number NJL440003612, | § § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:16-cv-465-B |
| LOWEN VALLEY VIEW, LLC and PANADE II LTD. d/b/a HILTON GARDEN INN, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER[1]

Defendants Lowen Valley View, LLC and Panade II, Ltd. d/b/a Hilton Garden Inn have filed an Opposed Motion to Compel Production of Certain Documents Withheld from Production [Dkt. No. 62] (the "MTC"), seeking an order under Federal Rules of Civil Procedure 37(a) to order Plaintiff Certain Underwriters at Lloyd's of London ("Certain Underwriters") to produce three withheld documents.

United States District Judge Jane J. Boyle has referred the MTC to the undersigned United States magistrate judge for hearing, if necessary, and

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

determination under 28 U.S.C. § 636(b). *See* Dkt. No. 65.

Certain Underwriters filed a response, *see* Dkt. No. 67; Defendants filed a reply, *see* Dkt. No. 72; and Certain Underwriters filed a sur-reply, *see* Dkt. No. 80. The Court determines that a hearing or oral argument is not necessary to resolve the MTC.

In their reply, "Defendants concede that [Certain Underwriters] have met their burden to show that the document Bates numbered Lloyds 00387 was properly withheld based on the attorney-client communication privilege." Dkt. No. 72 at 2. But remaining for decision is whether Certain Underwriters must produce three documents withheld as protected work product: (1) Lloyds 00381-00383, report dated April 1, 2015; (2) Lloyds 00399-00402, report dated May 23, 2015; and (3) Lloyds 00387-00398, Frontier Notes Report dated March 11, 2015 – August 5, 2016. According to Defendants, the first two documents are "reports are from Justin Whedbee of Frontier Adjusters to Ross Fry of Peninsula Insurance Bureau, the claims administrator for Certain Underwriters," and "were made by Frontier Adjusters while they were adjusting the claim for Certain Underwriters." Dkt. No. 63 at 5. Defendants note that "Derek Phipps, the independent adjuster assigned to the Lowen claim testified that Frontier Adjusters used these reports to document his investigation and make recommendations." *Id.* And the third document is a set of log notes "created by adjusters not employed by Certain Underwriters, Justin Whedbee of Frontier and/or Derek Phipps, the independent adjusters with Frontier." *Id.* at 6. Defendants note that "Phipps testified that the notes are made to document evaluations that occur during the adjustment of the claim." *Id.*

The pertinent procedural and factual background is familiar to the parties, and the Court will not repeat it here.

The following legal standards govern Certain Underwriters' assertion of work-product protection:

> [T]he issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law.... The federal work product doctrine, as codified by Federal Rule of Civil Procedure 26(b)(3), provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection. But "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. As the advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."
>
> Among the factors relevant to determining the primary motivation for creating a document are "'the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.
>
> Like all privileges, the work product doctrine must be strictly construed. The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden. Instead, "'a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection.'" The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." In fact, "'resort to *in camera* review is

appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible.'"

*OrchestrateHR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014) (citations omitted).

"If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006). Rule 26(b)(3) instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED. R. CIV. P. 26(b)(3). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. *See id.*

In support of its response and withholding of the documents at issue, Certain Underwriters submitted the Affidavit of Brian Wall. *See* Dkt. No. 69 at 12-13 of 13. Mr. Wall attests:

> 2. "I am currently a member of the Property Claims team at Syndicate 2013. I manage the investigation and resolution of property damage claims made under relevant policies."
> 3. "During the investigation of the claim made by the Insured, Lowen Valley View, Panade II, Ltd d/b/a Hilton Garden Inn, once the issues of late notice and the prejudice suffered by Underwriters arose, a determination was made that litigation was probable."
> 4. "On March 2, 2015, Peninsula Insurance Bureau sent a letter to Lowen Valley View, LLC stating that as a result of the loss, Underwriters would be proceeding with the investigation under a full and complete

reservation of rights."

5. "From March 2, 2015, the actions taken by the representatives of Underwriters were in expectation of litigation."

6. "Once the investigation was complete, the determination regarding the late notice and prejudice was confirmed."

7. "On February 18, 2016, a Denial Letter based on late notice was sent to Ajay Desai at Lowen Valley View, LLC."

*Id.*

Based on this testimony, Certain Underwriters assert as follows:

- After receiving notice, Underwriters' investigation of the Loss began with the January 12, 2015 inspection of the Property conducted by the independent adjuster, Derek Phipps ("Phipps") of Frontier Adjusters ("Frontier"). Phipps was retained for the limited purpose of inspecting the Property, documenting the damage he observed, and reporting recommendations for repair. On January 19, 2015, Phipps completed an estimate for repair of damage noted during the inspection in the net amount of $472,028.08.
- On March 2, 2015, Peninsula Insurance Bureau sent a letter to Defendants stating that as a result of the late reporting of the loss, Underwriters would be proceeding with the investigation under a full and complete reservation of rights ("the ROR Letter").
- Underwriters subsequently retained Tim P. Marshall, Principal Engineer and Meteorologist at Haag Engineering ("Haag"), who analyzed data relating to weather activity in the vicinity of the Property. Marshall determined that three hail events, involving hail greater than one inch in diameter, occurred outside the Policy period – between March 10, 2010 and April 3, 2012. In sum, because of the passage of time and the numerous hail events that occurred from 2010 to 2012, it is not possible to definitively discern which hail event, if any, caused the damage to the Property.

....

The two Frontier reports withheld from discovery constitute ordinary work-product. They were prepared in anticipation of litigation by a representative of Underwriters. These reports are dated April 1, 2015 (Lloyds 00381-00383) and May 23, 2015 (Lloyds 00399-00402) and were written by Justin Whedbee, General Adjuster of Frontier Adjusters ("Whedbee"), and sent to Ross Fry of Peninsula Insurance Bureau. .... These reports were generated after the transmission of the ROR Letter and when Underwriters had reason to believe litigation would ensue. As

such, they are protected by the work-product protection privilege.

....

     The Frontier Notes Report includes twenty-eight (28) entries prepared by Phipps and Whedbee. These notes range in date from March 11, 2015 – August 5, 2016 and bear bates label numbers Lloyds 00387-00398. Twenty-seven (27) of the Frontier Notes that have been withheld from discovery constitute ordinary work-product prepared in anticipation of litigation by representatives of Underwriters. These entries were created after the ROR Letter was sent to Defendants and after Underwriters reasonably anticipated litigation would arise.

     Additionally, of these twenty-eight (28) entries, nine (9) were drafted after Underwriters retained the law firm of Holman Fenwick Willan USA LLP, which is yet another factor this Court can rely on to determine the primary motivation for the creation of these notes was in anticipation of litigation.

Dkt. No. 68 at 2, 5-7 (footnotes omitted).

In their reply, "Defendants object to Wall's affidavit in its entirety because he does not establish that his affidavit is based on personal knowledge. The affidavit is self-serving and uncorroborated by support on the record. In addition, paragraphs 3 and 5 of Wall's affidavit as they are purely conclusory, devoid of supporting facts, and illogical." Dkt. No. 72 at 2. But, particularly in this context, these objections go to the weight, if any, to afforded – not the admissibility per se of – this testimony in support of Certain Underwriters' work-product claims.

Defendants also reply that Certain Underwriters "withheld documents of the type typically prepared for ordinary business purposes which were created before anticipation of litigation was objectively reasonable" and "have not established that the primary motivating purpose behind the creation of withheld documents was to aid in possible future litigation." Dkt. No. 73 at 2. Defendants contend that "[t]he primary motivating purpose behind the creation of the adjuster's notes was not to help litigate

over those claims but rather to make a coverage and payment determination." *Id.*

Without the Court's leave, Certain Underwriters filed a sur-reply, asserting that "1. As a result of the thirty month delay in Defendants' reporting of the claim Underwriters anticipated litigation very early; 2. Brian Wall's affidavit is sufficient and Plaintiffs' objections should be overruled; and 3. The documents withheld from discovery were prepared in anticipation of litigation and therefore, are protected from discovery by the work-product privilege." Dkt. No. 75 at 1.

The Court will consider Certain Underwriters' response to Defendants' objections to Mr. Wall's affidavit. *See id.* at 5-6. But, otherwise, the Court notes that, once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* N.D. Tex. L. Civ. R. 7.1. The movant therefore is entitled to file the last pleading. Sur-replies, and any other filing that serves the purpose or has the effect of a sur-reply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter. Filing a sur-reply requires leave of court and a showing of good cause or exceptional circumstances. Consequently, a party must not seek leave to file a sur-reply as a routine matter.

Here, Defendants' reply did not include any new evidence or legal theories in support of their MTC that Certain Underwriters, in fairness, must be given an opportunity to address. *See Austin v. Kroger Texas, L.P.*, ___ F.3d ___, No. 16-10502, 2017 WL 1379453, at *8 (5th Cir. Apr. 14, 2017) ("As to Austin's motion to file a surreply, the district court did not abuse its discretion because Kroger did not raise any new arguments in its reply brief, and Austin did not discuss his expert report on

causation."). The Court therefore will not consider the other argument in the sur-reply.

Other judges in this circuit have considered work-product claims in similar contexts. In a case in which an insurer withheld "approximately 134 documents on grounds of attorney-client privilege, work product doctrine, and the investigative privilege" and "[t]he documents at issue, which are listed on Defendant's First Amended Privilege Log, include communications and notes regarding communications between Defendant's employees, in-house counsel, and attorneys with the law firm of Thompson Coe Cousins & Irons, LLP," the court noted that

> [c]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. *See, e.g.*, *Ianelogic, Inc. v. Great American Spirit Ins. Co.*, No. 3:08-CV-1164-BD, 2010 WL 1839294, at *5 (N.D. Tex. May 6, 2010) (citing cases). "[E]ven though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection." *Id.* In the context of an insurance dispute, the question of whether documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation. *Id*; *see also U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007).
> ....
> Although Plaintiff disputes that these facts provide "a solid basis for questioning Plaintiff's claim," [the] explanation [in the sworn declaration of its Special Investigations Designee, Denise Lupear,] demonstrates that Defendant's investigation of Plaintiff's claim differed from an ordinary coverage investigation almost from its inception. The initial loss report from the broker to Defendant on March 6, 2012 characterized Plaintiff's claim as "very suspicious" and requested that Defendant assign the claim directly to the Special Investigations Unit. The next day, Plaintiff retained counsel because of questions concerning the validity of its claim. On March 9, Defendant learned that local police were so suspicious of the alleged theft that they wanted [Plaintiff's owner] to submit to a polygraph interview. Under these circumstances, the Court has little difficulty in determining that, by the time Lupear first contacted Thompson Coe on March 30, Defendant anticipated litigation with Plaintiff and retained

counsel for the specific purpose of obtaining legal services and advice in preparation for litigation. Thus, Plaintiff is not entitled to the withheld documents.

*MM United Enter., Inc. v. AGCS Marine Ins. Co.*, No. 3:12-cv-3744-L, 2013 WL 12126235, at *4 (N.D. Tex. June 18, 2013) (citations and footnote omitted).

In another decision that "relate[d] to a discovery dispute plaintiff OneBeacon Insurance Company ('OneBeacon') and defendants T. Wade Welch & Associates (the 'Welch Firm') and T. Wade Welch (collectively, the 'Welch Litigants') [were] having about OneBeacon's assertion that its claims notes on or after December 22, 2010, [were] protected by either the attorney-client privilege or the work-product doctrine," the court explained that

> [h]ere, the main issue is whether OneBeacon's communications with outside counsel relating to coverage are privileged and protected or whether, instead, OneBeacon's counsel was merely performing the ordinary business functions of an insurance company. "To the extent [an] attorney acted as a claims adjuster, claims process supervisor, or claim investigation monitor, and not as a legal advisor, the attorney-client privilege would not apply." *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 671 (S.D. Ind.1991). Similarly, "[d]ocuments created by an insurer or its representative tend not to be protected by the work product doctrine if they were prepared as a 'more or less routine investigation of a possibly resistible claim.'" *Kan. City S. Ry. Co. v. Nichols Constr. Co., L.L.C.*, Nos. 05–1182, 05–5220, 05–4653, 2007 WL 2461014, at *5 (E.D. La. Aug.27, 2007) (quoting *Tejada Fashions Corp. v. Yasuda Fire & Marine Ins. Co. (U.K.), Ltd.*, No. 83 Civ. 5512(RO), 1984 WL 500, at *3 (S.D.N.Y. June 18, 1984)). Thus, the key question is when did OneBeacon shift from merely investigating the claim to anticipating litigation. The Fifth Circuit has noted that litigation pertaining to coverage is appropriately anticipated from the date an insurer has a "solid basis to question the ... insurance claim." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).
> ....
>
> While the court agrees that often the date an insurer anticipates litigation is the date that it denies coverage, a bright-line rule is

inappropriate. ....

       Here, unlike in [*Lanelogic Inc. v. Great Am. Spirit Ins. Co.*, No. 3:08-cv-1164-BD, 2010 WL 1839294 (N.D. Tex. May 6, 2010)], OneBeacon has pinpointed a "definite shift from acting in its ordinary course of business to acting in anticipation of litigation." The Welch Defendants argue that this court, like the Lanelogic court, should determine that any documents related to the investigation that predate OneBeacon's coverage determination cannot have been created in anticipation of litigation and therefore were created in the course of OneBeacon's ordinary business. OneBeacon asserts it attorneys were giving legal advice relating to coverage and other issues because litigation was reasonably anticipated after OneBeacon received the demand letter from DISH. The conclusory statement that OneBeacon anticipated litigation, standing alone, is not enough to show that OneBeacon anticipated litigation and that the attorney-client privilege or work-product doctrine should protect communications with attorneys about coverage or documents prepared by OneBeacon's attorneys after this date. See *Lanelogic*, 2010 WL 1839294, at *6 (considering the insurance company's statement that "the primary motivating purpose for the creation of such documents was to aid in possible future litigation" to be "self-serving" and finding that "other evidence suggests that litigation concerns were not the primary motivating purpose behind the creation of the documents at issue"). However, when one couples the statement that the matter was referred to outside counsel in anticipation of litigation with the contents of the letter received from DISH on December 22, 2010, and considers this information in light of the claims at issue in this litigation, it is entirely reasonable to believe that OneBeacon referred the matter to outside counsel in anticipation of litigation.

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. Civ. A. H-11-3061, 2013 WL 6002166, at *1, *5, *6 (S.D. Tex. Nov. 12, 2013) (footnote and citations omitted).

       Unlike the circumstances presented in those cases, here Certain Underwriters have not explained how, and presented evidence of specific and precise facts to show that, the primary motivating purpose behind the creation of these particular reports and notes was to aid in possible future litigation. Even if Certain Underwriters have shown that litigation was reasonably anticipated at the time of these documents'

creation after there was a definite shift from acting in its ordinary course of business to acting in anticipation of litigation or that there was a solid basis to question the insurance claim, Certain Underwriters have not shown that these particular documents created by these particular adjusters would have not been created without regard to whether litigation was expected to ensue and were not made in the ordinary course of business as opposed to in anticipation of litigation.

Certain Underwriters have failed to meet their burden to support withholding these documents as protected work document and therefore must, by **June 16, 2017**, produce to Defendants the withheld documents labeled as (1) Lloyds 00381-00383; (2) Lloyds 00399-00402; and (3) Lloyds 00388-00398.

But, considering all of the circumstances here and the Court's ruling above, the Court orders, under Federal Rule of Civil Procedure 37(a)(5), that the parties will bear their own expenses, including attorneys' fees, in connection with the MTC.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS Defendants' Opposed Motion to Compel Production of Certain Documents Withheld from Production [Dkt. No. 62].

SO ORDERED.

DATED: June 9, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE